IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

M.I.T., INC.,                          *
a Georgia Corporation,                 *
                                       *
          Plaintiff,                   *
                                       *        CV 114-081
     v.                                *
                                       *
MEDCARE EXPRESS, N. CHARLESTON,        *
LLC, a South Carolina Limited          *
Liability Company,                     *
                                       *
and                                    *
                                       *
MEDCARE URGENT CARE CENTER,            *
W. ASHLEY, LLC, a South                *
Carolina Limited Liability             *
Company,                               *
                                       *
and                                    *
                                       *
MEDCARE EXPRESS LEXINGTON, LLC,        *
a South Carolina Limited               *
Liability Company,                     *
                                       *
          Defendants.                  *

---

**O R D E R**

---

Presently pending before the Court is Plaintiff's Motion
for Default Judgment. (Doc. 9.) For the reasons set forth
below, Plaintiff's motion is **GRANTED**.

## I. BACKGROUND

This dispute arises from a contract between Plaintiff and
Defendants regarding the sale and service of medical imaging

equipment. (Compl. ¶ 6-10.) Plaintiff is in the business of selling and servicing the imaging equipment, and Defendants provide medical services to the general public. (Id. ¶ 6.) In 2010, Radwin S. Hallaba, M.D., who owns and manages the three Defendant companies, spoke with Plaintiff regarding the purchase of CT Imaging Equipment, along with service for those machines. (Id. ¶ 7.)

The present dispute regards contracts entered into by all three Defendants; the contract terms are identical, though they were entered into on different dates. (Id. ¶ 8-10.) Each contract provided for the purchase of the CT machine and thirty-six months of service for that machine. (Id.) The machine cost $150,000 for Medcare Express, N. Charleston and Medcare Urgent Care Center, but $160,000 for Medcare Express Lexington. (Id.) The monthly service fee was $4,500 for each Defendant. (Id.)

On October 1, 2010, Plaintiff quoted Medcare Express, N. Charleston for the purchase and service of the machine. (Id. ¶ 8.) In response, Medcare Express, N. Charleston paid for the equipment and eleven months of service, leaving twenty-five months unpaid. (Id.) On May 15, 2011, Plaintiff quoted Medcare Urgent Care Center for the purchase and service of the machine. (Id. ¶ 9.) In response, Medcare Urgent Care Center paid for the equipment and four months of service, leaving thirty-two months unpaid. (Id.) On January 5, 2012, Plaintiff quoted Medcare

Express Lexington for the purchase and service of the machine. (Id. ¶ 10.) In response, Medcare Express Lexington paid for the equipment but has yet to pay any of the service payments, leaving thirty-six months unpaid. (Id.) In Plaintiff's complaint, it alleges that Defendants, on multiple occasions, acknowledged their debt under the service agreement via e-mail. (Id. ¶ 12.) The contracts additionally provided that, in the event of default, Plaintiff may "terminate this Agreement and all Service Obligations and accelerate all remaining payments due under th[e] Agreement." (Compl., Exs. 2-4.) Plaintiff provided service for the equipment to all Defendants, upon Defendants' request. (Id. ¶ 13.)

On March 25, 2014, Plaintiff filed suit seeking to compel arbitration and/or for breach of contract and quantum meruit. (Doc. 1.) Defendants waived service on May 6, 2014, and their answers were due May 26, 2014. (Doc. 3.) Defendants failed to plead or otherwise respond to the Complaint. (Doc. 8.) Subsequently, Plaintiff filed its Motion for Default Judgment on June 17, 2014, asserting that, pursuant to Federal Rule of Civil Procedure 55(b), the Court should enter a default judgment against Defendants on its claims. (Doc. 9.)

## II. DISCUSSION

"[D]efendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for a judgment entered . . . . The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[1] A defendant, by his default, is only deemed to have admitted the "plaintiff's well-pleaded allegations of fact." Id. "[T]hree distinct matters [are] essential in considering any default judgment: (1) jurisdiction; (2) liability; and (3) damages." Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004).

### A. Jurisdiction

The parties in this case are diverse and the amount in controversy exceeds $75,000. Thus, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

The Complaint alleges that the Defendants are South Carolina limited liability companies. (Compl. ¶ 2.) To determine whether nonresident defendants are subject to personal jurisdiction in Georgia, the Court must perform a two-part analysis. Diamond Crystal Brands, Inc. v. Food Movers Int'l,

---

[1] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (holding Fifth Circuit decisions made on or before September 30, 1981, are binding precedent in the Eleventh Circuit).

4

Inc., 593 F.3d 1249, 1257-58 (11th Cir. 2010). First, the Court must decide whether the exercise of personal jurisdiction is proper under Georgia's long-arm statute. Id. Second, the Court must determine whether there are sufficient "minimum contacts" with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. Id.; Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945).

Here, the parties agreed in the Equipment Management and Repair Agreements to the jurisdiction of the State or Federal Courts of Columbia County, Georgia. (Doc. 1, Exs. 2-4.) Contractual provisions such as these, which provide for the advance consent of jurisdiction, are valid and enforceable. Lightsey v. Nalley Equip. Leasing, Ltd., 432 S.E.2d 673, 675 (Ga. Ct. App. 1993). In fact, the Supreme Court held in Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), that "a variety of legal arrangements" exist through which a litigant can consent to personal jurisdiction and explicitly recognized that "in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." Id. at 472 n.14 (internal quotation marks

omitted).  Thus, this Court properly has both personal and subject matter jurisdiction over the parties.

## B. Liability

Based on Plaintiff's allegations and the evidence in the record, the Court is satisfied that the well-pleaded allegations of the Complaint state a cause of action for breach of contract against Defendants and that there is a substantive, sufficient basis in the pleadings for the relief Plaintiff seeks.[2]  The evidence submitted by Plaintiff as to liability includes the governing contracts and the affidavit of Rick Player, President and Owner of M.I.T., Inc.

Under Georgia law, the elements for a breach of contract claim are: "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."  Norton v. Budget Rent A Car Sys., Inc., 705 S.E.2d 305, 306 (Ga. Ct. App. 2010).  Here, the complaint asserts that Defendants breached the terms of the contracts and service agreements.  Specifically, the contracts required Defendants to (1) pay the purchase price of each CT machine and (2) pay $162,000 divided into thirty-six monthly installments for service.  (Doc. 1, Exs. 2-4.)  By virtue of their default,

---

[2]   Plaintiff's Complaint sets forth several claims – an application to compel arbitration, breach of contract, quantum meruit, and for costs of litigation.  (Doc. 1.)  Because the Court is satisfied that Plaintiff has established a claim for breach of contract, it need not address Plaintiff's other claims.

Defendants have admitted that they have not maintained the monthly payments in accordance with the contract. Accordingly, the Court finds that, based on the well-pleaded allegations in the complaint and record evidence, Defendants are liable for damages resulting from their breach of the purchase contracts and service agreements.

### C. Damages

Notwithstanding the propriety of default judgment against Defendants, it remains incumbent on Plaintiff to prove its damages. "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." Whitney Nat'l Bank v. Flying Tuna, LLC, No. 11-0249, 2011 WL 4702916, at *3 (S.D. Ala. Oct. 4, 2011). Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003); see also Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for the award). However, a judicial determination of damages is unnecessary where the claim is for a sum certain or for a sum which can by computation be

made certain. See Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1364 n.27 (11th Cir. 1997); see also S.E.C. v. Smyth, 420 F.3d 1225, 1231 (11th Cir. 2005).

Here, Plaintiff has provided the Court with documentation of the contracts at issue. Each contract provided for the purchase of equipment, as well as a thirty-six month service agreement. (Doc. 1, Exs. 2-4.) As discussed above, each Defendant has breached the service agreement. Medcare Express N. Charleston paid eleven months, but failed to pay the following twenty-five months, totaling $112,500.00. Medcare Urgent Care Center made four payments, but failed to pay the following thirty-two months, totaling $144,000.00. Finally, Medcare Express Lexington has not made a single payment, though service was provided, equaling $162,000.00 in damages.

Plaintiff also requests attorney's fees, as provided for in the contracts. Georgia law allows for the collection of litigation expenses where "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense[.]" O.C.G.A. § 13-6-11. On September 29, 2014, this Court requested detailed documentation regarding any attorney's fees incurred by Robert J. Lowe, counsel for Plaintiff. (Doc. 10.) In response, Mr. Lowe filed an affidavit as well as invoices and billing account records. (Doc. 11.) In these records, Mr. Lowe asserts that he spent

36.05 hours on the matter, at $300.00 per hour, and that Plaintiff paid $400 in filing fees and other costs, totaling $11,215.00. (Doc. 11, Ex. 1.)

"The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (quotations omitted) (noting that courts may consider twelve factors in determining the reasonableness of hours and rates[3]). The product of these two figures is the "lodestar." Id. After calculating the lodestar, the Court may then consider whether it should be adjusted upwards or downwards. Norman v. Hous. Auth., 836 F.2d 1292, 1302 (11th Cir. 1988); Lambert v. Fulton Cnty., 151 F. Supp. 2d 1364, 1369 (N.D. Ga. 2000). "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Norman, 836 F.2d at 1303.

---

[3] The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Bivins, 548 F.3d at 1350 n.2.

### i. Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Id. at 1299. The "going rate" in the community is the most critical factor in setting the fee rate. Martin v. Univ. of S. Ala., 911 F.2d 604, 610 (11th Cir. 1990). The relevant legal community is the district in which the court sits. Knight v. Alabama, 824 F. Supp. 1022, 1027 n.1 (N.D. Ala. 1993) (citing Turner v. Sec'y of Air Force, 944 F.2d 804, 808 (11th Cir. 1991)). Because the Court is itself considered an expert on hourly rates in the community, it may consult its own experience in forming an independent judgment. Norman, 836 F.2d at 1303.

Plaintiff seeks an hourly rate of $300.00 per hour. This Court has previously approved $250.00 per hour as a reasonable billing rate in the Augusta legal market. See Guzman v. Consumer Law Group et al., No. 1:11-cv-187, Doc. 91 (S.D. Ga. Nov. 6, 2012); Johnson v. YKK Am., Inc., No. 3:07-cv-048, Doc. 171 (S.D. Ga. Apr. 29, 2010); Ingram v. Kellogg's Sales Co., No. 1:09-cv-021, Doc. 39 (S.D. Ga. Feb. 24, 2010); Salazar v. Milton Ruben Chevrolet, Inc., No. 1:06-cv-195, Doc. 86 (S.D. Ga. Mar. 6, 2009). Upon consideration of the circumstances of this case, the relevant legal market, counsel's experience and expertise, and recognizing that two years have passed since the above

mentioned cases, the billing rate will be set at $275.00 per hour for Mr. Lowe.

## ii. Hours Reasonably Expended

While exercising proper "billing judgment," attorneys must exclude excessive, redundant, or otherwise unnecessary hours from fee applications. ACLU of Ga. v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999). "[H]ours excluded are those that would be unreasonable to bill a client" without reference to the skill, reputation, or experience of counsel. Norman, 836 F.2d at 1301. "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis." Id.

Plaintiff has met its burden with regard to hours billed with one exception. Two entries reflect time Mr. Lowe spent addressing this Court's September 29, 2014 Order (Doc. 10). The award in this case is only for time spent on the underlying complaint and default judgment, not the September 29, 2014 Order requiring supplemental information regarding attorney's fees. Thus, these time entries will be excluded from the award. Accordingly, the Court finds the lodestar in this case to be $275.00/hour at 33.8 hours, or $9,295.00. Taking into account the filing fees, the total award of fees and costs is $9,695.00,

11

which shall be divided equally among the three co-defendants, each being responsible for $3,231.67.

## IV. CONCLUSION

Based upon the foregoing, Plaintiff's motion for default judgment (doc. 9) is **GRANTED**. The Clerk is instructed to enter judgment in favor of Plaintiff and against Defendants in the sum of **$115,731.67** from Medcare Express N. Charleston, **$147,231.67** from Medcare Urgent Care Center, and **$165,231.67** from Medcare Express Lexington. The Clerk is **DIRECTED** to **TERMINATE** all deadlines and motions, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this _14th_ day of October, 2014.

Honorable J. Randal Hall
United States District Judge
Southern District of Georgia